JUSTICE NELSON,
concurring in part and dissenting in part.
¶50 I agree generally with the result of the Court’s Opinion-i.e., that HSG is entitled to seek relief for the taking of its property interest in its sand and gravel operations. I thus concur in the Court’s decision as to Issue 3.1 dissent, however, from the Court’s decision on Issues 1 and 2. While I am not going to belabor the point, the County’s adoption of District 43, here, was little more than illegal reverse spot zoning. The record demonstrates that District 43 was specifically designed to *150 gerrymander HSG out of its ability to extend its mining operation onto its remaining property. The fact that this was accomplished as a result of a petition by other landowners (Part 1 zoning) is beside the point. The “zone” was carefully crafted to deprive HSG of the further use of its property. I am not persuaded that, but for the creation of District 43, there was any real doubt that HSG would have been entitled to a further open cut mining permit for its other 311 acres. It is simply a bootstrap argument to say that the permit to further mine would not have been granted by DEQ because of the zoning. Moreover, District 43 was not adopted because of the Growth Policy. Rather, the zoning was put in place specifically to prevent HSG from mining sand and gravel on the remainder of its property. Illegal spot zoning does not become legal if there is something in the Growth Policy that might support it. And the County’s rationale to that effect is simply smoke and mirrors. Indeed, District 43 was and is the poster child of NIMBY (not in my back yard) zoning.
¶51 It strikes me that this is yet another example where a majority of citizens decide they do not like a particular business operation, although that operation is perfectly legal, and thus set out to restrict the business’s operations through a “carefully crafted” measure, but without any expectation of having to compensate the business owner. Cf. Kafka v. Mont. Dept. of Fish, Wildlife & Parks, 2008 MT 460, ¶¶ 96-248, 348 Mont. 80, 201 P.3d 8 (Nelson & Rice, JJ., & Swandal, D.J., dissenting). The constitutional guarantee “that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.” Armstrong v. United States, 364 U.S. 40, 49, 80 S. Ct. 1563, 1569 (1960). It seems to me this principle ought to apply to the residents of District 43. Accordingly, I am in agreement with the Court’s decision to remand for takings proceedings. In this regard, I also join ¶¶ 55-57 of Justice Rice’s concurring and dissenting opinion. ¶52 Finally, I continue to maintain that Montana’s seeming lock-step reliance on federal takings jurisprudence is a mistake. Article II, Section 29 of Montana’s Constitution sets forth this State’s organic law on eminent domain. As I explained, in detail, in Buhmann v. State, 2008 MT 465, 348 Mont. 205, 201 P.3d 70, Article II, Section 29, as a fundamental right, triggers the highest level of protection by Montana’s courts, and our enforcement of this right must take into account other coordinate and overlapping guarantees in Montana’s *151 Declaration of Rights. Buhmann, ¶¶ 131-135 (Nelson, J., & Swandal, D.J., dissenting). Moreover, the language of Montana’s eminent domain provision is different than that of its federal counterpart in the Fifth Amendment. Article II, Section 29 guarantees just compensation to the full extent of the loss where private property has been “taken or damaged for public use.” The problem is that this Court will continue to rely, lock-step, on federal takings jurisprudence until such time as Montana counsel begin to argue for the broader protections afforded under Article II, Section 29 in the trial courts and on appeal. There always has to be a first case.
¶53 With the foregoing observations, I concur in part and dissent in part from the Court’s decision and join ¶¶ 55-57 of Justice Rice’s Concurrence and Dissent.
JUSTICE RICE,
concurring in part and dissenting in part.
¶54 I concur with the Court’s resolution of Issue 1.1 also agree with the thrust of Justice Nelson’s Concurrence/Dissent. I particularly agree with his conclusion that there was no “real doubt that HSG would have been entitled to a further open cut mining permit,” Concurrence/Dissent, ¶ 50, and for that reason I would conclude that under this record HSG established a constitutionally protected property interest in. pursuing a permit and remand on that issue as well.
¶55 This case differs significantly from Seven Up Pete in that HSG not only owns the gravel outright, but it has already obtained a permit and is currently mining. The Court scours the statutes for pockets of agency discretion to deny further permitting, Opinion, ¶ 37, but in doing so the Court in my view over-emphasizes the theoretical basis for denying further permitting and under-emphasizes the factual reality that HSG has been previously successful in satisfying all of these concerns. We have never stated that the certainty of obtaining a permit must be absolute, but this decision pushes to that end. I cannot recall a case in the years of my tenure where the Court has approved a takings claim; all have been denied. A survey of the Court’s jurisprudence reveals a seeming course to make takings claims more difficult to establish, to the point, as Justice Nelson explains, that legal business operations can be shuttered by the government “without any expectation of having to compensate the business owner.” Concurrence/Dissent, ¶ 51.
¶56 We forget, I think, that the right of compensation for the loss of private property to public purpose is one of the Bill of Rights and the *152 Declaration of Rights, just like any other civil right this Court is tasked with protecting. As a matter of basic civics, I find it hard to believe that, in a democracy formed upon the concept of private property rights, the government can prohibit a party from extracting gravel from the land it owns, which the party is already extracting under permit, and do so with no obligation to recompense the party for taking the value of this extractable property right out from beneath them. I believe many citizens would be surprised to learn this as well. ¶57 It may be helpful to remember at this juncture that, ultimately, the citizens are the masters of the government, the courts, and the law. If, in their view, government is overstepping its bounds, and the law is deemed powerless by the courts to stop the transgression, the citizens can petition for their grievances, change the law, and curtail the government. As thorny as the takings issue may be, the Legislature is nonetheless empowered to legislate on the issue, and the citizens are empowered to propose direct initiatives, to provide greater protections against government action they deem to be excessive.
¶58 I concur and dissent.